**United STATES COURT OF APPEALS**
**For the Fifth Circuit**

---

No. 01-40020

---

REGINALD LENAUD REEVES

Petitioner-Appellant,

v.

JANIE COCKRELL, Director, Texas Department of Criminal Justice Institutional Division

Respondent-Appellee.

---

Appeal from the United States District Court
For the Eastern District of Texas, Houston Division

---

(H-98-CV-278)

January 4, 2002

Before SMITH, BENAVIDES, and DENNIS, Circuit Judges.

PER CURIAM:[*]

Reginald Lenaud Reeves, a Texas death row inmate, requests a certificate of appealability

(COA), as required by 28 U.S.C. § 2253(c)(1)(A), to appeal the district court's denial of his

---

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

1

application for habeas corpus relief. Because federal review of most of these claims is procedurally barred and because Reeves has failed to make a substantial showing of the denial of a constitutional right on the remaining claim, we reject his request for a COA.

I.      FACTS AND PROCEDURAL HISTORY

According to the evidence presented at Reeves's trial, police discovered the battered and bloody body of 14 year-old Jenny Lynn Weeks in a hallway closet of an abandoned building in Clarksville, Texas late in the evening of September 9, 1993. Earlier that night, a Clarksville resident had called police to report that two people were carrying what appeared to be a roll of carpet toward the abandoned house. The police developed Reeves as a suspect after learning that the victim had been living at his apartment in the days prior to her death.

On the evening after the murder, Reeves, who was 19 at the time, voluntarily went with his mother to the Clarksville police station where he was arrested and charged with Weeks's murder. In a written statement, he admitted to his involvement in the victim's death. The State did not introduce this confession at trial.

Testimony at the trial revealed that Weeks had run away from a group foster home in Paris, Texas with another girl, Sharon Forte, four days before her death. Weeks initially stayed with Forte and her boyfriend, Raymond Jackson, at Jackson's mother's house in Clarksville. Jackson, who is Reeves's cousin, introduced him to Weeks. Reeves offered to let Weeks stay at his apartment, and she accepted the offer. On the night of the murder, Weeks, Reeves, and another individual named Ralph Brown[2] drank beer, watched a movie, and listened to music in Reeves's apartment. Forte and

[2]Ralph Brown was a co-defendant in the case. He pleaded guilty to murder and was sentenced to 35 years in prison.

2

Jackson visited Reeves's apartment that night and observed Reeves kissing Weeks on the cheek. Later that night, Reeves told a close friend that he had strangled a 14 year-old girl.

An autopsy of Weeks's body revealed that her vagina and anus were torn. She also had a human bite mark on her lower rib cage. The medical examiner testified that she had bruises and abrasions on her face, neck, chest, knees, legs, ankles, buttocks, and back. Her fingernails were broken or cracked, consistent with defensive injuries. Her shorts and underwear were blood-soaked. An internal examination revealed multiple hemorrhaging of the skull and neck, as well as neck injuries indicative of "significant" pressure having been applied. The forensic pathologist concluded that the cause of death was manual strangulation and that her injuries were consistent with forced sexual intercourse. Forensic evidence revealed Reeves's hair on the victim's body and his semen in her anus.

A jury found Reeves guilty of the capital murder of Jenny Lynn Weeks on October 4, 1994, and sentenced him to death. On October 23, 1996, the Texas Court of Criminal Appeals affirmed his conviction and sentence in an unpublished opinion and refused Reeves's motion for rehearing as untimely. Reeves did not file a petition for a writ of certiorari to the United States Supreme Court. Reeves next filed an application for a writ of habeas corpus in state court on August 18, 1997. The state district court did not hold an evidentiary hearing, but entered findings of fact and conclusions of law recommending that relief be denied. The Texas Court of Criminal Appeals subsequently adopted the district court's findings and conclusions and denied Reeves's writ on February 18, 1998. Reeves filed a petition for a writ of habeas corpus in federal court on August 24, 1998, but dismissed it one week later. Reeves then filed a second application for a writ of habeas corpus in state court on September 1, 1998. On February 3, 1999, the Texas Court of Criminal Appeals dismissed the second application as an abuse of the writ pursuant to the Texas Code of Criminal Procedure article

3

11.071, § 5(a). Reeves filed a petition for writ of habeas corpus in federal court on June 25, 1999. The district court denied his petition on November 16, 2000, and granted the Respondent's motion for summary judgment. The district court found that four of the five issues raised by Reeves were procedurally defaulted because they had been raised in his second state habeas application, which had been dismissed as an abuse of the writ. Reeves sought a COA, which the district court denied on February 2, 2001.

Reeves seeks a COA in this court on five issues: (1) the trial court's failure to give a parole eligibility instruction to the jury describing how long Reeves would remain in prison, were he given a life sentence; (2) the violation of Reeves's due process rights and of the Eighth Amendment resulting from the Texas Court of Criminal Appeals' refusal to review his challenge to the sufficiency of the evidence to sustain the jury's finding that no sufficient mitigating circumstance existed to justify a life sentence; (3) the denial of effective assistance of counsel as guaranteed by the Sixth and Fourteenth Amendments based on trial counsel's failure to investigate Reeves's background for mitigating evidence; (4) the denial of effective assistance of counsel based on trial counsel's failure to call attention to the reputations of the witnesses who testified against Reeves during the punishment phase; and (5) the violation of Reeve's Fifth Amendment rights based on the State's alleged comments on Reeves's failure to testify.

II.     STANDARD OF REVIEW

Because Reeves filed his application for a writ of habeas corpus after the effective date of the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA),[3] its provisions apply to his

---

[3]Pub. L. No. 104-132, 110 Stat. 1214 (codified as amended in scattered sections of 8, 18, 22, 28, 40, and 42 U.S.C.).

claims.[4]  Under the AEDPA, a prisoner seeking review of the district court's denial of his habeas petition must first obtain a COA.[5]  We may issue a COA only if Reeves "has made a substantial showing of the denial of a constitutional right."[6]  Determining whether a COA should issue after a district court dismisses a petition on procedural grounds has two components, one directed at the underlying constitutional claims and one directed at the district court's procedural holding.[7]  Both showings must be made before the court of appeals may entertain the appeal.[8]

III.    PROCEDURAL DEFAULT

It is well settled that federal review of a claim is procedurally barred if the last state court to consider the claim expressly and unambiguously based its denial of relief on a state procedural defect.[9] Section 5 of Article 11.071 of the Texas Code of Criminal Procedure prohibits consideration of a successive application for state habeas relief absent a showing of cause, if the applicant urges grounds that could have been, but were not, raised in his first habeas application.  In *Emery v. Johnson*, we held that the strict abuse-of-the-writ doctrine adopted by Texas, and later codified by Article 11.071 §5, represents an adequate and independent procedural bar for purposes of federal habeas review.[10] A petitioner can only overcome this procedural bar by showing cause and prejudice for his default.[11]

---

[4] *Lindh v. Murphy*, 521 U.S. 320, 336 (1997).

[5] 28 U.S.C. § 2253(c)(1).

[6] 28 U.S.C. § 2253(c)(2).

[7] *Slack v. McDaniel,* 529 U.S. 473, 483-85 (2000).

[8] *Id.*

[9] *Fisher v. Texas*, 169 F.3d 295, 300 (5th Cir. 1999) (citing *Coleman v. Thompson*, 501 U.S. 722, 729 (1991)).

[10] 139 F.3d 191, 200 (5th Cir. 1997).

[11] *Id.* at 196; *Nobles v. Johnson*, 127 F.3d 409, 423 n. 33 (5th Cir. 1997).

The Texas Court of Criminal Appeals denied Reeves's second application for state habeas relief as an abuse of the writ pursuant to Article 11.071 § 5. All of the claims presented to the federal district court in Reeves's petition for habeas corpus were raised in Reeves's second state application. Therefore, because the last state court to consider Reeves's claims expressly and unambiguously based its denial of relief on a state procedural defect, federal review of these claims is procedurally barred.[12] Reeves seeks to excuse the procedural default on the basis of inadequate state habeas counsel who failed to raise these claims during his first state habeas application. We have held, however, that the failure of a habeas attorney to raise and preserve an issue cannot constitute cause because there is no constitutional right to counsel in habeas proceedings.[13] Therefore, the district court was correct in its ruling that Reeves procedurally defaulted his first four claims for failing to present them in his initial state habeas petition. Because Reeves's first four claims are procedurally barred, we need not reach the underlying constitutional claims.[14]

IV.    STATE'S COMMENT ON FAILURE TO TESTIFY

We review Reeves's claim that the prosecutor commented on his failure to testify to determine whether he "has made a substantial showing of the denial of a constitutional right."[15] While the Fifth Amendment prohibits a prosecutor from commenting directly or indirectly on a defendant's failure

---

[12]*See Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991); *Coleman,* 501 U.S. at 734. On direct appeal to the Texas Court of Criminal Appeals, Reeves raised two points of error that later surfaced in his second state application for habeas corpus. He asserted that the evidence was insufficient to support the jury's negative answer to the mitigation issue and that the prosecutor improperly commented on his failure to testify.

[13]*Martinez v. Johnson*, 255 F.3d 229, 240-41 (5th Cir. 2001)*; In Re Goff,* 250 F.3d 273, 275 (5th Cir. 2001); *Jones v. Johnson,* 171 F.3d 270, 277 (5th Cir. 1999); *Callins v. Johnson,* 89 F.3d 210, 212 (5th Cir. 1996).

[14]*Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000).

[15]28 U.S.C. § 2253(c)(2).

to testify,[16] a prosecutor may comment on the failure of the defense, as opposed to the defendant, to counter or explain the evidence.[17]  Such a comment is a basis for reversal only where it is "of such a character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify," and there is no equally plausible explanation for the remark.[18]  For example, commenting on the absence of specific evidence in the record does not constitute a comment on the defendant's failure to testify when witnesses other than the defendant could have testified to such information.[19]

During the trial, the prosecutor made two remarks that defense counsel objected to as violating Reeves's Fifth Amendment right not to testify.  During closing arguments at the guilt or innocence phase of the trial, the prosecutor said:

> The thing that turns this into a capital murder ...[is] that it occurred in the course of committing an aggravated sexual assault.  Mr. Davis [defense counsel] told you on Voir Dire that the evidence would show that it was consensual.  That the evidence would show there was a fight and Jenny Weeks kicked Reginald Reeves in the groin.  I'm still waiting to hear it.

The district court correctly held that this comment did not violate Reeves's Fifth Amendment right to remain silent because there was an equally plausible explanation for the prosecutor's remark. Reeves's own opening statement referred to one potential eyewitness, two others in whom Reeves had confided, and physical evidence of the crime, all of which impliedly would be presented to the jury and exonerate Reeves.  The prosecutor commented on the failure of the defense to counter or

---

[16] *Griffin v. California,* 380 U.S. 609 (1965).

[17] *United States v. Guzman,* 781 F.2d 428, 432 (5th Cir. 1986).

[18] *Id.*

[19] *Green v. Johnson*, 160 F.3d 1029, 1042 (5th Cir. 1998).

explain the evidence of an aggravated sexual assault, and was, at the very least, invited by Reeves as a response to his opening statement. Under the circumstances, the prosecutor's remarks could readily be construed as commentary on Reeves's failure to present evidence through a witness other than himself and not a direct reference to his failure to testify.

The second comment that Reeves's counsel objected to came during closing argument at the sentencing phase of the trial when the prosecutor said, "The fact of the matter is, is that Reginald Reeves is, to coin an old phrase, a wolf in sheep's clothing. You have seen him sit here quietly throughout this trial, head down . . . ." Defense counsel immediately objected, but the court overruled his objection. The prosecutor continued, "Maybe you're sitting there, and he doesn't look real scary. Well, now you know what's inside. You know that this guy is a time bomb. He's a human time bomb. Every time things go badly, he's going to react violently. You know that now."

The prosecutor's remark came after defense counsel had presented witnesses who had testified that Reeves appeared remorseful for killing the victim and that he was not a violent or dangerous person. Defense counsel had then told the jury that Reeves was in tears when the State closed its case against him, indicating Reeves's remorse for the crime.

In context, the prosecutor's remark can easily be interpreted as a response to defense counsel's argument that Reeves's demeanor indicated that he was remorseful, not as a comment on his failure to testify. Because there is another equally plausible explanation for the remark, the prosecutor's intent was not manifestly impermissible, and no violation of the Fifth Amendment occurred.

For the reasons stated in this opinion, the request for COA is DENIED.

8